UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORINDA SWAIN,

                Plaintiff,

v.

THE COUNTY OF CALHOUN,
and GUY PICKETTS,
in his individual and official capacity,
by GUY PICKETTS JR., Personal Representative
of the Estate of GUY PICKETTS, deceased,

                Defendants.
_____/

Hon. _____

Case No. _____

**COMPLAINT AND
JURY DEMAND**

Anne Buckleitner (P59832)
Smietanka, Buckleitner, Steffes & Gezon
Attorneys for Plaintiff
4250 Chicago Drive, SW, Suite B
Grandville, MI 49418
(616) 667-2217

## COMPLAINT

*Pursuant to 42 U.S.C. §1983, Plaintiff seeks civil reparations for
her wrongful 2002 conviction for a crime of which she was actually innocent.
Plaintiff's conviction violated the Fifth, Sixth, Eighth, and Fourteenth Amendments
of the United States Constitution. Plaintiff was wrongly incarcerated for eight years and
subjected to an addition seven years under restrictive bond conditions while the County of
Calhoun fought her release. All charges against her will nolle'd May 18, 2016.*

Comes now Plaintiff Lorinda Swain ("Ms. Swain") by and through her counsel, Anne Buckleitner of SMIETANKA, BUCKLEITNER, STEFFES & GEZON, and for her Complaint says:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

3. This is an action to redress the deprivation of Plaintiff's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

5. At all material times Ms. Swain was a resident of Michigan.

6. Ms. Swain was investigated by officers of the Calhoun County Sheriff's Department, and in 2002 was prosecuted by the Calhoun County Prosecutor's Office.

7. Defendant Calhoun County is and was at all times a municipal corporation duly incorporated under the laws of the State of Michigan, doing business and exercising its governmental authority over its employees within the County of Calhoun, State of Michigan.

8. Guy Picketts ("Detective Picketts") worked as a Detective for the County of Calhoun, State of Michigan, during all events giving rise to this Complaint. Detective Picketts died on November 3, 2010. He is named here in his individual and official capacities through his estate's Personal Representative, Guy Picketts, Jr., who has been appointed for purposes of this action.

### III. APPLICABLE LAW AND POLICY

9. The Fifth Amendment to the United States Constitution provides in pertinent part that "No person shall be … deprived of life, liberty, or property, without due process of law…" U.S. Const. amend. V.

10. The Sixth Amendment to the United States Constitution provides in pertinent part that "In all criminal prosecutions, the accused shall enjoy the right…to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

11. The Eighth Amendment to the United States Constitution in pertinent part prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. IIX.

12. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

13. 42 U.S.C. §1983 provides that every person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects,

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

## IV. COMMON ALLEGATIONS

14. In 2002 Ms. Swain was convicted of four counts of first-degree criminal sexual conduct following a jury trial in the 37th Circuit Court of Calhoun County ("the Trial Court"), the Honorable Conrad J. Sindt presiding.

15. Ms. Swain was sentenced to four concurrent prison terms of twenty-five to fifty years.

16. Except for the testimony of a thoroughly discredited jailhouse informant, the only evidence presented at trial against Ms. Swain consisted of the uncorroborated testimony of her fourteen year-old son, Ronnie Swain, who claimed that Ms. Swain had performed oral sex on him each and every weekday just before he caught the bus to school, when he was around five to eight years of age.

17. Following Ms. Swain's conviction, Ronnie emphatically and consistently recanted his trial testimony,[1] and took a polygraph examination that indicated no deception in his recantation.

18. Post-appellate proceedings began when Ms. Swain, represented by the University of Michigan Innocence Clinic ("the Clinic") brought a Motion for Relief from Judgment in the Trial Court based on several newly discovered witnesses as well as claims of ineffective assistance of counsel. That court, with Judge Sindt again presiding, set the matter for hearing.

---

[1] Ronnie Swain said after the fact that he had falsely accused Ms. Swain, his adoptive mother, to explain to his stepmother his own sexual acting-out, and that his stepmother had encouraged his perpetuation of that testimony.

4

19. Following a hearing, on August 4, 2009, the Trial Court found for Ms. Swain's claims of ineffective assistance of trial counsel and found "a significant possibility" that Ms. Swain was innocent of all charges against her. The Trial Court ordered that the Jury's verdict be set aside and she be retried.

20. The Trial Court did not rule, however, upon Ms. Swain's remaining claims for relief based upon claims of newly discovered evidence in the form of certain uncalled witnesses, as well as ineffective assistance of appellate counsel for failure to exhaust appellate remedies.

21. On August 4, 2009, the Trial Court also ordered Ms. Swain's release from prison on a $30,000 bond, imposing conditions pending re-trial that included that she live with her parents, abide by a curfew, wear an electronic tether, report weekly to Community Corrections, submit to random urine sampling, refrain from operating a motor vehicle, not leave Calhoun County except with court approval, submit to psychiatric testing if requested, and not be alone with children under 16 years of age.

22. She continued on bond for seven years, during which time the Calhoun County Prosecutor moved on multiple occasions to revoke Ms. Swain's bond--resulting in contested hearings and creating significant uncertainty and fear for Ms. Swain.

23. On June 8, 2010, the Michigan Court of Appeals reversed the trial court's finding.

24. On December 16, 2010, the Michigan Supreme Court voted 4-3 to deny Ms. Swain's application for leave to appeal, and on April 28, 2011, that Court denied a motion to reconsider by the same margin.

25. On May 4, 2011, Ms. Swain returned to the Trial Court, bringing a "Motion to Supplement [her 2009] Motion for Relief from Judgment and for Evidentiary Hearing on Supplemental Claim and Undecided Claim" based upon the discovery of a newly discovered exculpatory

pre-trial witness statement taken by Calhoun County Detective Guy Picketts, who had been the original investigator of the charges against Ms. Swain.

26. Ms. Swain asserted that Detective Picketts had taken the exculpatory statement from Ms. Swain's estranged former boyfriend, Dennis Book ("Book"), who had lived with her and her sons at the time of the alleged sexual abuse.

27. Ms. Swain argued that Book had been unavailable to Ms. Swain at the time of trial, and that, previously unbeknownst to her, Book had made an exculpatory pre-trial statement to Detective Picketts that had never been provided to Ms. Swain's defense counsel.

28. The Trial Court ordered a supplemental evidentiary hearing to be held on December 20, 2011, and April 26, 2012.

29. The issue before the Trial Court was in two parts: whether the allegation of withheld evidence was credible, and if so, whether it was material and exculpatory, pursuant to *Brady v. Maryland,* 373 U.S. 83; 83 S.Ct. 1194, 10 L.Ed 2d 215 (1963).

30. The County of Calhoun was represented during the hearing by Assistant Prosecuting Attorney Jeffrey Kabot. APA Kabot called multiple witnesses and cross-examined Ms. Swain's witnesses.

31. Although Detective Picketts had died in 2010, testimony from former co-workers about his work habits, as well as his sworn testimony on relevant issues from another matter, was presented by APA Kabot.

32. The interests of Calhoun County and Detective Picketts were symbiotically aligned at that hearing.

33. Book testified at that hearing that he had lived with Ms. Swain as her boyfriend during the majority of time that the daily sexual abuse was alleged to have occurred, and that Ms. Swain

and he had parted under bitter terms before any criminal charges were brought. He had rebuffed all efforts at contact made by her family before her trial, but said that he would have testified if subpoenaed.

34. Book further testified that he had been telephonically interviewed by (the now deceased) Detective Picketts prior to Ms. Swain's trial and that he had emphatically told Picketts that the abuse could not have occurred as alleged without his knowledge, and that if he had known of it he would have reported it to authorities.

35. None of the investigatory reports prepared by Detective Picketts contained any reference to an interview of Book, nor was an interview of Book referred to among the materials produced by the prosecutor to Ms. Swain's defense attorney.

36. During the evidentiary hearing on April 26, 2012, Calhoun County produced two witnesses to challenge Book's testimony: Deidre Ford Buscher, the Calhoun County Assistant Prosecuting Attorney who had prosecuted Ms. Swain in 2002, and Brian Gandy, a former Calhoun County Detective who had been trained by and worked with Detective Picketts.

37. Both witnesses testified emphatically and categorically that the deceased Detective rarely conducted witness interviews by telephone, that on those few occasions when he conducted a telephonic interview it was *always* recorded, that he *always* memorialized all interviews in a supplemental report, and he *always* disclosed all supplemental reports to the prosecutor with whom he was working, who then made the requisite discovery to defense counsel.

38. Buscher testified that Picketts had not given her any supplemental report regarding an interview with Book, therefore she knew that Picketts had prepared no supplemental report of any interview with Book, and the fact that there was no supplemental report proved that Picketts had not interviewed Book.

7

39. On May 2, 2012, Ms. Swain augmented the evidentiary hearing record by filing with the prosecutor's stipulation subsequently acquired sworn deposition testimony given by Detective Picketts three years before, on March 25, 2009, as well as that of several fact witnesses, taken in an unrelated civil action, *Everson v. Calhoun County*, Docket No. 1:08-CV-859 (WD of Michigan).

40. In *Everson v. Calhoun County,* the Plaintiff alleged constitutional violations and retaliatory prosecution by Detective Picketts. As with Ms. Swain's case, the Everson case involved material testimony that Detective Picketts had either not documented at all, or documented inaccurately.

41. Detective Picketts' *Everson* testimony directly contradicted the Buscher and Gandy testimony that he always reduced witness statements that he gathered through interview into a report. To the contrary, in *Everson,* Picketts testified that whether he reduced witness statements to writing "depend[ed] on what it entailed."

42. The *Everson* deposition testimony further established from multiple fact witnesses that it was not unusual for Picketts to interview witnesses by telephone.

43. The supplemental testimony from the *Everson* case reflected that Picketts had previously omitted, shaded, and changed testimony to fit an outcome he desired.[2]

44. On August 21, 2012, following the evidentiary hearings and review of all briefing and submitted materials, the Calhoun County Trial Court issued Supplemental Findings on Motion for Relief from Judgment. *Supplemental Findings*, attached as Exhibit 1.

---

[2] On August 20, 2012, the *Everson v. Calhoun County and Picketts* jury returned a judgment against Detective Picketts' estate of $1.048 million, including $300,000 in punitive damages, plus attorneys fees for Detective Picketts' role in perpetrating a retaliatory prosecution.

45. The Trial Court found that for purposes of determining whether a Brady violation had occurred, Picketts had in fact interviewed Dennis Book, and that Book's proximity to and schedule at the time of the allegations of daily sexual abuse was such that the abuse could not have occurred without him knowing of it.

46. The Trial Court also found that Dennis Book's exculpatory statement had not been disclosed to Ms. Swain or her defense counsel.

47. The Trial Court noted that Detective Picketts' failure to disclose exculpatory evidence to Ms. Swain's defense must by law be attributed to the prosecution as well.

48. The Trial Court further found that the failure to disclose the exculpatory Book statement "clearly prejudiced" the Defendant by depriving her of an important defense witness, one whose testimony had significant bearing on the credibility of the one witness, Ronnie Swain, upon whose testimony her conviction rested. *Supplemental Findings at p. 4*.

49. The Trial Court granted Ms. Swain's motion for new trial for multiple reasons, including finding that she had been denied Constitutional Due Process in the form of a *Brady* violation in her original trial.

50. A review of all exculpatory evidence led the Court to find Ms. Swain innocent and that her conviction had been attained in violation of her constitutional rights.

51. On February 5, 2015, the Michigan Court of Appeals overturned the Trial Court's ruling. *Court of Appeals Opinion* attached as Exhibit 2.

52. On May 18, 2016, the Michigan Supreme Court reversed the Court of Appeals' ruling and ordered Ms. Swain's case to be set for retrial. *Michigan Supreme Court Opinion* attached as Exhibit 3.

53. On May 19, 2016, Calhoun County Prosecutor David Gilbert moved to *nolle prosequi* Ms. Swain's 2002 convictions, writing that his office was "unable to meet trial burden." His Motion was granted that day.

54. Since the *nolle'ing* of Ms. Swain's convictions, the Calhoun County Prosecutor has publicly mouthed the County's respect for and acceptance of the Michigan Supreme Court's finding, but continued to defame Ms. Swain, publically stating that there was "no way" that the people who knew Picketts witnessed a Brady violation, and endorsing the jury's original verdict, thus implying that Ms. Swain's conviction was sound. http://wbckfm.com/calhoun-county-prosecutor-discusses-swain-case/

55. The issue of the constitutional soundness of Ms. Swain's conviction and whether it arose from a *Brady* violation, is identical to the issue decided by the Calhoun County Circuit Court and affirmed by the Michigan Supreme Court.

56. The Brady violation was actually litigated and determined by a valid and final state court judgment.

57. All parties' interests as to the precise issue now before this federal court were fully represented, appealed, and reviewed in the state court proceedings.

58. Whether Ms. Swain's conviction arose from a *Brady* violation has been conclusively established in the state courts and cannot be re-litigated pursuant to the Michigan doctrine of collateral estoppel, or, in the alternative, the state court determination is entitled to preferential consideration by this Federal court.

## COUNT I:
## FAILURE TO DISCLOSE EXCULPATORY EVIDENCE --
## DUE PROCESS/BRADY VIOLATION
## (DEFENDANT DETECTIVE PICKETTS
## IN HIS INDIVIDUAL AND OFFICIAL CAPACITY)
## (42 U.S.C. § 1983 – 5th, 6th, and 14th AMENDMENTS)

59. Paragraphs one through 58 are hereby incorporated by reference as if set forth in full herein.

60. Under the 5th, 6th, and 14th Amendments, Ms. Swain had a well established right to due process under the law.

61. At all material times, Detective Picketts was a Calhoun county employee acting under the color of state law.

62. The Michigan State courts found that Detective Guy Picketts withheld material and exculpatory evidence in the form of an interview with a witness, Dennis Book, in violation of Ms. Swain's due process rights as defined by the U.S. Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and progeny.

63. If Ms. Swain's trial counsel had been provided with the exculpatory witness statement made by Dennis Book to Defendant Picketts, she would have been acquitted at trial, but instead was wrongly convicted.

64. Picketts' failure to produce exculpatory evidence to Ms. Swain's defense counsel violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

65. Ms. Swain was profoundly damaged as the direct and proximate result of her wrongful conviction, subsequent loss of liberty during her incarceration of eight years and seven years subject to bond conditions (including regular periodic reporting, travel restrictions, an electronic tether, a curfew, and the protracted uncertainty of whether she was to be returned to prison due to prosecutorial efforts to revoke her bond.

66. Ms. Swain's reputation, character, personal finances, and standing in her community also suffered and continues to suffer as a direct and proximate result of her deprivation of due process.

### COUNT II:
### EIGHTH AMENDMENT VIOLATION OF THE PROHIBITION OF CRUEL AND UNUSUAL PUNISHMENT
### (DEFENDANT DETECTIVE PICKETTS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY)
### (42 U.S.C. § 1983)

67. Paragraphs one through 66 are hereby incorporated by reference as if set forth in full herein.

68. Defendant Picketts acted under color of law during all actions giving rise to this Complaint.

69. The 8th Amendment of the United States Constitution requires that cruel and unusual punishments not be inflicted.

70. Detective Picketts' withholding of an exculpatory witness statement from Ms. Swain and her defense counsel violated Ms. Swain's Constitutionally protected 8th Amendment rights, and was either intentional, grossly negligent, or deliberately indifferent.

71. As a direct and proximate result of Detective Picketts' actions, Ms. Swain, an innocent woman, was cruelly and unusually punished – she spent eight years in physical detention and, seven years outside of prison but subject to multiple bond conditions including regular periodic reporting, travel restrictions, an electronic tether, a curfew, and the protracted uncertainty of whether she was to be returned to prison due to prosecutorial efforts to revoke her bond.

72. Ms. Swain's health, reputation, character, personal finances, and standing in her community suffered and continues to suffer as a direct and proximate result of the Defendant's creation and imposition of cruel and unusual punishment.

## COUNT III:
## *MONELL* LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, OR DISCIPLINE AS TO DISCOVERY AND EXCULPATORY EVIDENCE
## (DEFENDANT CALHOUN COUNTY)
## (42 U.S.C. § 1983)

73. Paragraphs one through 72 are hereby incorporated by reference as if set forth in full herein.

74. Defendant Picketts acted under color of law during all actions giving rise to this Complaint.

75. Defendant Picketts testified under oath that he created official reports of his investigation on a selective basis, "depending on what the discussion entailed."

76. Detective Picketts was apparently untrained or unsupervised to ensure that he memorialized all aspects of his investigation and made it available for production to defense counsel.

77. When witness testimony is not reduced to a report, it obviously cannot be produced or be made available for discovery by defense counsel.

78. There is an obvious need for the County to train its investigators to reduce each and every interview to writing, regardless of "what the discussion entailed."

79. The need to properly train, supervise, and discipline employees regarding the uniform memorialization of witness interviews and their affirmative duty to produce potentially exculpatory evidence is obvious, and without such training investigations are likely to result in the violation of constitutional rights.

80. Policymakers of the County were thus deliberately indifferent to the need to train and supervise their investigators.

81. The failure to provide proper training and supervision was a policy for which the County is responsible.

82. Defendant Calhoun County's actions and omissions were the proximate cause of Ms. Swain's 15 year loss of liberty, as well of her past and ongoing shame, humiliation, fear,

13

emotional distress, psychological damage, physical injury, and damage to her reputation, character, finances, and standing in her community.

**WHEREFORE**, Ms. Swain respectfully requests judgment in her favor and against Defendants Detective Picketts and the County of Calhoun as follows:

A. Compensatory damages for Ms. Swain's 15-year loss of liberty, psychological and emotional distress and damages, shame, humiliation, loss of standing in her community, loss of income, damage and ongoing damage to her reputation, physical injury, and costs incurred during her 15-year fight against her wrongful conviction;

B. Punitive damages;

C. Injunctive relief requiring Defendant Calhoun County to take effective steps to prevent future due process deprivations through discovery errors;

D. Compensation for Plaintiff's and her family's out-of-pocket expenses incurred as a result of her wrongful arrest and incarceration;

E. Statutory interest;

F. Costs; and

G. Reasonable attorney fees.

### JURY DEMAND

Plaintiff hereby demands trial by jury.

SMIETANKA, BUCKLEITNER,
STEFFES & GEZON

/s/ Anne Buckleitner
_____
Anne Buckleitner (P59832)
Attorney for Plaintiff Lorinda Swain
4250 Chicago Drive, SW, Suite B
Grandville, MI 49418
616/667-2217

Dated: July 27, 2017